# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JIM W. KELLUM,

        Plaintiff,

vs.                                  **No. CIV 01-776 LCS/JHG**

CENTRAL FREIGHT LINES INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment, filed April 24, 2002 (*Doc.22*). The United States Magistrate Judge, acting upon consent and designation pursuant to 28 U.S.C. § 636(c), and having considered the pleadings, briefs, relevant law, and being otherwise fully advised, finds that this Motion should be **GRANTED**.

## I.  BACKGROUND

The following statement of facts is set forth in the light most favorable to Plaintiff, with all reasonable inferences from the record drawn in Plaintiff's favor.  *See Clanton v. Cooper*, 129 F. 3d 1147, 1150 (10th Cir. 1997).  Plaintiff was employed by Defendant Central Freight from September 1998 until February 14, 2001.  Compl. ¶5.  Central Freight is a service provider of transportation, providing transportation services for the public.  Couch Depo. at 6.  Plaintiff was

employed by Defendant Central Freight as a driver and loader in the Odessa and Hobbs terminal. Pl. Depo. 15.

Plaintiff was originally hired by Michael Mangold, who was the terminal manager for Odessa and Hobbs. Pl. Depo. 15. Plaintiff was terminated on February 14, 2001, after an incident involving his truck. Rich Couch was hired by Defendant Central as a terminal manger with supervisory authority over Plaintiff in September 2001. Compl. ¶6.

Plaintiff "is not of Hispanic decent but appears by color to be of Hispanic decent [sic]." Compl. ¶4. The color of Mr. Kellum's skin is darker than that of the other non-Hispanic employees of Central Freight. Pl. Ex. 1. Central Freight had four employees at the time that Plaintiff was supervised by Mr. Couch; of those, three were Anglo (including Mr. Kellum) and a third was Hispanic (Mr. de la Paz). Compl. ¶7; Couch Depo. at 7; Pl. Depo. at 28-29; Pl. Ex. 3. After Plaintiff was fired, Defendant Central Freight hired an Anglo driver. Compl. ¶10.

Plaintiff had received a superior performance evaluation by a previous supervisor. Compl. ¶11. Additionally, Plaintiff had received raises, and had not been subject to any termination procedures by his previous supervisor. Depo. of Mangold at 20, 21. Michael Mangold, Mr. Kellum's previous supervisor, characterized Plaintiff as "hard-working, appeared committed to his job, [and was] willing to spend the time to get the job done." Depo. of Mangold at 21. Additionally, Mr. Mangold stated that Plaintiff "needed a lot of close supervision, needed repeated supervision, was a little sloppy in his appearance" and that Plaintiff "short cut it a little bit as far as administrative duties, short cut sometimes on the safety." Depo. of Mangold at 21.

Plaintiff did not like the way that he was treated by Mr. Couch, the supervisor who replaced Michael Mangold. Pl. Depo. at 25-26. Mr. Couch once made the comment that "the

only two people that were working there weren't Kellum or De La Paz" while Plaintiff and Eddie de la Paz were present. Pl. Depo. at 26. Mr. Couch would also "talk down" to Mr. Kellum, and "would roll his eyes and puff" when speaking to Plaintiff. Pl. Depo. at 26. After Mr. Couch became manager, he fired the cleaning lady. Pl. Depo. at 28. Mr. de la Paz, who was the lead driver, was assigned the task of delegating the cleaning of the bathroom on a rotational basis. Couch Depo. at 24. Each worker was instructed to take a turn cleaning the office and the bathroom weekly. *Id* Only Mr. de la Paz and Plaintiff were actually made to clean the bathroom. Pl. Depo. at 29. Mr. Kellum heard from a woman in the Odessa office that Mr. Couch was trying to find ways to fire him. Pl. Ex. 1.

The work loads of the various drivers were not the same. Pl. Depo. at 26. Mr. Kellum and Mr. de la Paz were assigned to routes with more stops than the lighter skinned Anglo employees. Pl. Ex. 3. Plaintiff had a Texas route and would have to make from 17 to 25 stops. Pl. Depo. at 28. The other drivers, Jimmy Johnson and Ronnie Walker, would have no more than 12 or 13 stops on their routes. *Id.* Plaintiff was thus covering more miles on his route. *Id.* Mr. Kellum was not permitted to make sales calls, although another driver, Jimmy Johnson, was permitted make sales calls. Pl. Depo. at 29. In addition, Plaintiff was required to account for his time when he was out, although other drivers were not similarly required to account for their time. *Id.*

Central Freight utilizes form Employee Performance Appraisals, which are used to evaluate the performance of its employees in a variety of areas. Couch Depo. at 10. Where an employee does not perform adequately, that employee may be placed at a higher step in the "performance counseling process," a form of corrective action. Couch Depo. at 27. In addition,

infractions of rules by employees may be addressed by the completion of a "performance written counseling report." The steps of the performance counseling process include: 1. verbal counseling; 2. written counseling; 3. final written counseling ([which]can result in probation and/or suspension); 4. suspension/termination. Pl. Ex. 6 at 3. The performance written counseling report further provides that "based on the circumstances, the severity of the behavior, and at Central's discretion, employees may not always be put through each successive step. Employees may also be subject to other corrective measures, such as demotion, transfer, immediate suspension or termination." *Id*. Each report includes a section entitled "Employee's Acknowledgment and Comments" wherein the employee may include a written response to the report. Pl. Ex. 6 at 3. The employee may sign indicating that he has read and understood the completed report, and the report is also signed by the supervisor and a witness. *Id*.

Mr. Mangold completed Employee Performance Appraisals of Mr. Kellum on January 14, 1999; March 23, 1999; December 17, 1999; and March 23, 2000. Pl. Ex. 6 at 51-75. In each of these appraisals, Mr. Kellum's overall performance rating was "employee meets expectations." Pl. Ex. 6 at 53. Mr. Mangold had also completed an Employee Performance Appraisal of Mr. Kellum on November 10, 1998, in which Mr. Kellum's overall performance rating was "employee does not meet expectations." Pl. Ex. 6 at 78. Mr. Kellum received an annual Employee Performance Appraisal completed by Mr. Couch on December 19, 2000; in this appraisal, Plaintiff's overall performance rating was "employee does not meet expectations" and Mr. Kellum was placed in Step II of the process for 90 days for improperly manifesting equipment. Pl. Ex. 6 at 20. Mr. Mangold had completed "performance written counseling reports" for various violations by Mr. Kellum, but none were related to accidents. Depo. of Mangold at 29-30. Mr.

Mangold had previously placed Mr. Kellum in Step II of the counseling process for a safety violation, i.e.,exiting a tractor and leaving it running, on May 19, 1999. Pl. Ex. 6 at 67.

On February 13, 2001, at about 3:00 p.m., Plaintiff was delivering in Seminole, Texas, when he pulled over to determine where to make a delivery. Pl. Depo at 19, 23. Plaintiff pulled into an unpaved parking lot near a retail store construction site. Couch Depo. at 19. The lot had loose dirt and it was raining lightly at the time. Pl. Depo. at 21. When Kellum learned that he was at the wrong address, he got back into his truck to leave, but found that the brakes were locked up. Pl. Depo. at 20. Plaintiff attempted to pull the trailer forward and then backwards in an unsuccessful attempt to release the trailer. Pl. Depo. at 20. Plaintiff shut off the engine of his truck, walked across the street, and called the Odessa office for instructions on how to unlock his trailer. *Id*. Plaintiff told the dispatcher that there had been a failure of the brake system, that he could not get the brakes to release, and that he was unable to pull the equipment. Couch Depo. at 19. Plaintiff followed the various instructions he was given for about an hour, but still was unable to release the trailer. Pl. Depo. at 23. Plaintiff was thereafter instructed by the Odessa office to transfer the freight to another trailer and return to the terminal. Pl. Depo. at 20. Plaintiff Kellum transferred the freight from the trailer which could not be moved to another trailer and returned to Hobbs. *Id*.

A dispatcher arranged for a repair service to go to the location to fix whatever was wrong with the trailer. Couch Depo. at 18. Mechanics were called from Powers Diesel, a local shop in Seminole, to check on the trailer. Pl. Depo. at 21; Couch Depo. at 20. Powers Diesel removed the trailer using a power divider and took it to their shop. Couch Depo at 19; Def. Ex. C. A mechanic from Powers Diesel reported that he could not find anything wrong with the brake

system, and "[t]hat the problem was with the equipment being buried into the material around the construction site, and [Powers Diesel] had to use a power divider to pull the equipment out." Pl. Depo. at 22; Couch Depo. at 20; Def. Ex. C. Mr. Kellum has always maintained that the trailer was not stuck and that there was a problem with the air brakes. Def. Ex. C.; Pl. Depo. at 22. Plaintiff opined that perhaps Powers Diesel found nothing wrong with the brakes because sufficient time had passed to allow the problem with the air brakes to resolve itself. Pl. Depo. at 22.

Mr. Couch did not go to the site at the time of the incident. Couch Depo. at 18. On February 14, 2001, Mr. Couch came from Odessa to Hobbs to investigate the incident. Pl. Ex. 1; Couch Depo. at 18-19. While there, Mr. Couch informed Mr. Kellum that he was suspended because of the incident with his truck. Pl. Ex. 1. Mr. Couch completed a performance written counseling report for "failing to report an accident being stuck. Then reporting equipment failure." Pl. Ex. 6 at 2. The report provided for a suspension from February 15, 2001 through February 19, 2001 and stated that Mr. Kellum was to return to work on February 20, 2001. *Id.* at 3. The report placed Plaintiff in Step III of the Central Freight Lines, Inc. Performance Counseling Process. *Id.* Mr. Kellum's written comments in response to the suspension included a statement that he had not been stuck; rather, there had been a problem with the air brake system *Id.* The report provided that "any further occurrences thereafter will result in termination." *Id.* However, the bottom of the report contained the following language: "NOTE: Please be aware that based on the circumstances, the severity of the behavior and at Central's discretion, employees may not always be put through each successive step. Employees may also be subject to other corrective measures, such as demotion, transfer, immediate suspension or termination."

Pl. Ex. 6 at 2 (emphasis in original).

Becoming stuck in the mud is considered an "accountable accident if it requires a wrecker to pull the equipment out" by Central Freight. Couch Depo. at 22. After an investigation of the incident, Mr. Couch placed Mr. Kellum on suspension for three days. *Id*. As the terminal manager, Mr. Couch did not have the authority to terminate Mr. Kellum; however, a terminal manager may make a recommendation, which is considered by the Human Resources Department of Central Freight and the officers of the company, and that recommendation is generally followed. Couch Depo. at 22-23; Mangold Depo. at 13. Mr. Couch made a recommendation of termination, which was approved by the Human Resources Department and officers of Central Freight. Couch Depo. at 22-23.

Generally, having an accident is not automatically cause for termination by Central Freight. Mangold Depo. at 33. When an employee is involved in an accident, the accident is reported via electronic mail to the safety department of Central Freight, which grades the accidents. Mangold Depo. at 32. There are four grades of accidents, numbered one through four, with Grade 1 accidents being the most severe. *Id*. at 33. Central Freight requires an immediate suspension for Grade 1 and Grade 2 accidents. *Id*. Mr. Couch stated that Plaintiff was terminated because he said he had a mechanical failure when he was stuck, and falsified the accident at the scene. Couch Depo. at 26 The separation notice which Central Freight provided Plaintiff stated that Mr. Kellum was terminated involuntarily because of failure to report an accident. Pl. Ex. 6 at 1. In an email message from Rick Couch reporting the suspension to the Human Resources Department of Central Freight, the reason for suspension given is "failure to report an accident (stuck in mud) reported trailer had air brake failure." Pl. Ex. 6 at 7. Prior to

the incident, Plaintiff had never had trouble with the brakes on the trailer which he was unable to move on February 13, 2001.  Pl. Depo. at 22.

No other employee had an accident requiring termination while Mr. Kellum was employed by Central Freight.  Mangold Depo. at 28-30; Couch Depo. at 22.  Mr. Kellum had previously bumped a fixture while making a delivery. Mangold Depo. at 30.  Ronnie Walker, another driver, had a converter roll away from a dock, damaging the converter.  *Id*. at 29. After Plaintiff was terminated, driver Jimmy Johnson backed into an overhead door.  Couch Depo. at 23.  However, none of these accidents were rated "accountable" and none resulted in termination.   Mangold Depo. at 28-30; Couch Depo. at 22.  No other worker had ever allegedly given a false or inaccurate report about an accident which occurred while driving during the time that Mr. Couch was the manager of the Hobbs and Odessa terminal.  Couch Depo. at 32.

On March 28, 2002, Plaintiff Kellum filed a charge of discrimination with the EEOC. Compl. ¶13.  The EEOC issued Plaintiff a notice of right to sue on April 6, 2001.  *Id*.  Thereafter, Plaintiff filed his Complaint in this action on July 5, 2001.

## II.  STANDARDS FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6), 12(C), OR 56

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may ask the Court to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  If, on a 12(b)(6) motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.  Fed. R. Civ. P. 12(b).   After the pleadings are closed, any party may also move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

The courts use the same standard when evaluating 12 (b)(6) and 12 (c) motions. *Jacobsen v. Deseret Book Co.,* 287 F.3d. 936, __, 2002 U.S. App. LEXIS 7351, *4 (10th Cir. April 19, 2002). In ruling on a motion for judgment on the pleadings, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.2d 1138, 1160 (10th Cir. 2000). In accepting the allegations of the complaint as true, the court must consider whether the complaint standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior Sec'y,* 163 F.3d 1150, 1152 (10th Cir. 1998).

A motion for summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Denver Post Corp.*, 203 F.3d  748, 751 (10th Cir. 2000); Fed. R. Civ. P. 56(c). The Court examines the record and makes all inferences in the light most favorable to the non-moving party. *Munoz v. St. Mary-Corwin Hosp.* 221 F.3d 1160, 1164 (10th Cir. 2000). Summary judgment is proper "[w]here the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"; the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586-87 (citing Fed. Rule Civ. Proc. 56(e)). In addition, where the non-moving party will bear

the burden of proof at trial on a dispositive issue, "that party 'must go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Where a party brings suit pursuant to Title VII, that party may prove intentional discrimination "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *EEOC v. Wiltel, Inc.*, 81 F.3d 1508, 1513 (10th Cir. 1996)(quoting *United States Postal Serv. v. Aikens*, 460 U.S. 711, 716 (1983)); 42 U.S.C. § 2000-e2(a)(1)(LEXIS 2002). A prima facie case of discrimination is one sufficient to raise a presumption of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)(citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981)). The relevant inquiry is whether defendant intentionally discriminated against plaintiff based on protected class characteristics. *Jones v. Denver Post Corp.*, 203 F.3d 748, 752 (10th Cir. 2000). Where the party chooses to present indirect evidence, that party must meet the four-prong, burden-shifting test enunciated by the Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). The *McDonnell Douglas* test requires that the complainant "carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas*, 411 U.S. at 802. In order to establish a prima facie case in a discriminatory discharge case, a claimant need only show that "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not

eliminated after his discharge." *Perry v. Woodward,* 199 F.3d 1126, 1138 (10th Cir. 1999), c*ert. denied*, 529 U.S. 1110, 1110 (2000)(internal citations omitted). The burden thereafter shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employee's rejection. *McDonnell Douglas,* 411 U.S. at 803-04. The claimant must then show that the reason articulated by the employer is but a pretext. *Id.* at 804.

To survive summary judgment, a claimant relying on *McDonnell Douglas* "bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action." *English v. Colorado Dept. of Corr.,* 248 F.3d 1002, 1008 (10th Cir. 2001). In the case at bar, Plaintiff relies on indirect evidence to support his Title VII claim. Plaintiff thus bears the burden of presenting a Title VII prima facie case. Thereafter, the burden shifts to Defendant Central Freight articulate a legitimate, non-discriminatory reason for termination. If Defendant's burden is met, Plaintiff must establish that Defendant's stated reason for termination was pretextual. Accordingly, this Court must determine whether, examining the facts presented in the light most favorable to Plaintiff and making all inferences in his favor, Plaintiff failed to state a claim upon which relief may be granted, or, in the alternative, whether Defendant is entitled to judgment on the pleadings, or, in the alternative, whether no genuine issue of material fact exists as to the elements of the burden shifting Title VII prima facie case.

# III. ANALYSIS

**A      Whether Plaintiff Kellum has presented a prima facie case**

In order to meet his prima facie burden, a plaintiff in a discriminatory discharge case need only show that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications he was discharged; and (4) the job was not eliminated after his discharge. *Perry v. Woodward,* 199 F.3d 1126, 1138 (10th Cir. 1999),*cert. denied*, 529 U.S. 1110, 1110 (2000). Defendant Central Freight argues that Plaintiff has not met two of the necessary elements of a Title VII prima facie case:  first, that Plaintiff is not a member of a protected class; and second, that Plaintiff failed to show satisfactory job performance.  Defendant claims that Mr. Kellum's statement that he is not Hispanic necessarily precludes membership in a protected class.  Because Plaintiff has maintained that he is not Hispanic, Defendant argues that it is entitled to judgment on the pleadings.  However, Defendant's argument is misplaced.

Discrimination on the basis of color may be actionable under Title VII.   Although "[c]olor may be a rare claim because color is usually mixed with or subordinated to claims of race discrimination," the language of 42 U.S.C. § 2000e-2(a)(1) specifically prohibits discrimination on the basis of color.  *Felix v. Marquez*, 24 Empl. Prac. Dec. (CCH) P31,279 (D.C. 1980); 42 U.S.C. § 2000e-2(a)(1) (LEXIS 2002).   *See also Abdulrahim v. Glick*, 612 F.Supp. 256, 263 (N.D. Ind. 1985)( where the Court found that an allegation by a complainant that "his skin color is such that he may be perceived as 'non-white'" was sufficient to make a out a § 1981 case); *Vigil v. Denver*, 15 Empl. Prac. Dec. (CCH) P8000 (D. Colo. 1977) (where the Court, analyzing whether a claimant could proceed with a 42 U.S.C. § 1981 claim,found that "Mexican-Americans are subject to color-based discrimination.").  Moreover, the claimant need not belong to a

different racial group from the alleged discriminator, where the claimant alleges discrimination on the basis of color, rather than race. *See Walker v. Internal Revenue Serv.*, 713 F. Supp. 403, 407-408 (N.D. Ga. 1989)( where the District Court found that claimant, an African-American with light-colored skin, alleging discrimination by her supervisor, an African-American with dark-colored skin, on the basis of color, stated a cognizable claim under Title VII). However, the simple invocation of color does not necessarily make Plaintiff the member of a protected class. *See Ali v. National Bank of Pakistan*, 508 F. Supp. 611, 613-14 (S.D.N.Y. 1981) (where the Court noted that the complainant, a light-skinned Pakistani, did not make out a prima facie case for discrimination without providing evidence of a pattern of discrimination on the basis of color). Plaintiff asserts that his skin color is darker than that of the other non-Hispanic workers at Central Freight, and that lighter-skinned employees had a lighter workload and did not have to clean the bathroom at the Hobbs terminal. Pl. Depo. at 28; Pl. Ex. 1; Pl. Ex. 3. Plaintiff claims that the darker-skinned employees were required to account for their time and that the lighter-skinned employees were not. Pl. Depo. at 28; Pl. Ex. 3. Plaintiff claims that he and another darker-skinned employee, Eddie de la Paz, were the subject of a derogatory remark by his supervisor.[1] Pl. Depo. at 26. Plaintiff argues that these facts show that Mr. Couch, who made the recommendation to terminate, possessed a color-based animus against Plaintiff and other darker-skinned employees of Central Freight.

In the instant case, Plaintiff Kellum alleges that he is the member of a protected class, to wit, that of darker-skinned individuals. He alleges that the members of this protected class were

---

[1] Plaintiff claims that Rich Couch, his supervisor, once stated in his presence that "the only two people that were working there weren't Kellum or de la Paz." Pl. Depo. at 26.

subject to discriminatory treatment by Mr. Couch. Although Mr. Couch stated that he perceived Plaintiff Kellum to be "Anglo," Plaintiff's claim is predicated upon his skin color, not his race. Couch Depo. at 8; Compl. ¶4; Pl. Ex. 1. In *Miller v. Bed, Bath & Beyond*, the District Court found that where an African-American claimant alleged that she was made to perform cleaning and other maintenance duties while similarly situated Caucasian employees were not, claimant had established a prima facie case of discrimination under Title VII. *Miller v. Bed, Bath & Beyond,* 185 F. Supp. 1253, 1264-65 (N.D. Al. 2002). Plaintiff's Complaint and the documents and pleadings in this case demonstrate that Plaintiff's identification of himself as belonging to a class of darker-skinned individuals who were subject to allegedly discriminatory treatment on the basis of their skin color is sufficient to meet the first prong of his Title VII prima facie case.

Defendant also argues that Plaintiff cannot meet the second prong of the Title VII prima facie case, which Defendant identifies as "satisfactory job performance." Plaintiff has produced evidence to show that he received raises while employed by Defendant Central Freight, and that he had received employee performance appraisals which contained positive information. Pl. Depo. at 11-12; Pl. Ex. 6 at 19-79. In order to meet the second element of a Title VII prima facie case, the claimant need only show that his performance "was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision" to discharge the claimant. *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1420-21 (10th Cir. 1991). A claimant may meet his prima facie burden by providing credible evidence that he was qualified even if that evidence is disputed by the employer. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n.11 (10th Cir. 1999). Such evidence may include the claimant's own testimony that his work was satisfactory. *Id*. While there has been some dispute

about Plaintiff's job performance, Plaintiff has produced evidence to show that he received positive performance appraisals, had received raises, and that his performance was of sufficient quality to merit continued employment. Plaintiff and Defendant have submitted the very same employee performance appraisals to demonstrate Plaintiff's job performance. Although not uniformly positive, Plaintiff need only produce some evidence of satisfactory performance. The deposition testimony of Mr. Couch, Mr. Mangold, and Plaintiff, as well as the employee performance appraisals produced by both Plaintiff and Defendant, are sufficient to meet Plaintiff's burden of production as to the second prong of his Title VII prima facie case.

"The burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Ortiz v. Norton,* 254 F.3d 889, 895 (10th Cir. 2001). Defendant does not dispute that Plaintiff suffered an adverse employment action, namely termination, nor does Defendant dispute that Defendant hired another driver to replace Plaintiff. As such, the Court has examined only whether Plaintiff has satisfied his burden in meeting the first two prongs of his prima facie case. Having found that Plaintiff has provided sufficient evidence to demonstrate membership in a protected class and satisfactory job performance, I find that Plaintiff has met his burden in establishing a Title VII prima facie case under the *McDonnell Douglas* test. The burden thus shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the Plaintiff.

**B.**     **Whether Defendant Central Freight has articulated a legitimate, nondiscriminatory reason for termination**

Defendant must articulate a legitimate, nondiscriminatory reason for its termination of Plaintiff.  *McDonnell Douglas*, 411 U.S. at 803-04.  Defendant bears a burden of production, not persuasion. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981).  Defendant Central Freight has stated that Plaintiff Kellum was terminated for misreporting an accident as an equipment failure.   Defendant has met its burden to articulate a legitimate, nondiscriminatory reason for termination of Plaintiff Kellum.  The burden now shifts to Plaintiff.   In order to survive summary judgment, Plaintiff Kellum must show that there is a genuine issue of material fact as to whether Defendant Central Freight's reason for termination was pretextual.  *See Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir. 1999).

**C.**     **Whether Plaintiff Kellum has established that Defendant Central Freight's reason for termination was pretextual.**

A plaintiff establishes pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000) (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317 (10th Cir.1999)).  A plaintiff typically makes a showing of pretext in one of three ways:  (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy  or contrary to

company practice when making the adverse employment decision affecting the plaintiff. *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000).    A plaintiff who wishes to show that the company acted contrary to an unwritten policy or company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness. *Id.* The employee's subjective belief of discrimination is not sufficient to preclude summary judgment. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997).

In order to survive summary judgment, Plaintiff must demonstrate that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual - i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). When opposing a motion for summary judgment, the non-movant may not rest upon "mere allegations" but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Where a party relies upon evidence of derogatory comments, "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209-10 (10th Cir. 1999) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994). *But see O'Shea v. Yellow Technology Servs.*, 185 F.3d 1093, 1102 (10th Cir. 1999). The claimant must demonstrate a nexus between the allegedly discriminatory statements and the defendant's decision to terminate him. *Shorter,* 188 F.3d at 1210. Evidence of pretext, after presenting a prima facie case, may be sufficient to avoid summary judgment for the defendant without requiring the plaintiff to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1533-34 (10th Cir. 1995).

Where a claimant relies upon evidence of disparate treatment to show pretext in order to overcome summary judgment, that party must set forth specific examples of discriminatory action. *Jones v. Denver Post Corp.*, 203 F.3d at 756. Where the claimant relies upon proffered affidavits which are "wholly devoid of any specific instances of disparate treatment" and "[w]ithout specific examples of unlawful discrimination," the claimant cannot withstand a motion for summary judgment. *Id.*

Similarly, where the claimant relies upon affidavits containing allegations of racial prejudice, such evidence may not be sufficient to show pretext where the employer produces evidence to show that the claimant was terminated for misconduct. *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1010 (10th Cir. 2001)(where Court found that reliance upon affidavits containing allegations of racial prejudice to show pretext was not sufficient to survive summary judgment). In the instant case, Plaintiff has failed to set forth any specific facts or instances of discriminatory acts by Defendant. Although Plaintiff has alleged that his workload was different, that his route covered more miles, and that he was not allowed to make sales calls, Plaintiff has failed to provide any evidence that his workload, his assigned route, or the proscription against making sales calls was discriminatory.

In *Hill v. Textron Automotive Interiors, Inc.,* the Court granted summary judgment where the claimant, who was of English and Portuguese descent, and who claimed to be a person of color because his "skin [was] darker than a Caucasian's" failed to provide evidence of a race-based or color-based animus underlying comments made by his co-workers and his termination. *Hill v. Textron Automotive Interiors, Inc.,* 160 F. Supp. 2d 179, 181, 186 (N.H. 2001). Plaintiff points to the alleged comment by Mr. Couch that "the only two people that were working there

weren't Kellum or De La Paz" to show pretext. Pl. Depo. 25-26. However, such comments are not sufficient to show pretext, without evidence showing a nexus between the comments and the termination. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209-10 (10th Cir. 1999). Like the claimant in *Hill*, Plaintiff cannot demonstrate that this comment was motivated by or is evidence of color-based animus.[2] In addition, Plaintiff has produced no evidence to show a nexus between the comment by Mr. Couch and his termination. Plaintiff refers to a statement by a woman in the Odessa office that Mr. Couch was trying to find ways of firing him. Pl. Ex. 1. However, mere allegations are not sufficient to demonstrate pretext and overcome summary judgment. *See, e.g., Jones v. Denver Post Corp.*, 203 F.3d at 756.

Plaintiff has failed to demonstrate that Defendant acted contrary to its policy or company practice in terminating his employment. *See Kendrick*, 220 F.3d at 1230. It is undisputed that accidents generally do not automatically result in termination by Central Freight. Mangold Depo. at 33. Plaintiff was, however, not automatically terminated; rather, he was placed on suspension. Couch Depo. at 22. While the form which placed him on suspension stated that Mr. Kellum could return to work after his suspension, and further provided that Plaintiff would be terminated after any other incidents in the next thirty days, the same form further states that "based on the circumstances, the severity of the behavior and at Central's discretion, employees may not always be put through each successive step. Employees may also be subject to other corrective

---

[2] The instant case may be distinguished from *Danville v. Regional Lab. Co.*, 2002 U.S. App. LEXIS 11386 (10th Cir. June 12, 2002). In *Danville,* the Court found an adequate nexus between a comment made during a committee meeting where interview candidates were chosen and the decision not to interview the claimant was made. *Id*. at *13. The Court noted that a jury could conclude that the comment was intended to explain why the plaintiff was not being interviewed. *Id*. Mr. Kellum has presented no evidence to suggest that the comment made by Mr. Couch was intended to explain the decision to terminate his employment with Central Freight.

measures, such as demotion, transfer, immediate suspension or termination." Pl. Ex. 6 at 2. The written form indicated that other corrective measures, beyond the three-day suspension, could possibly be taken by Defendant. Plaintiff has not produced evidence to show that Central Freight acted contrary to its written or unwritten policy, or company practice, in terminating his employment.

Plaintiff has not produced evidence to show that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness. Mr. Kellum was involved in a previous incident which was not rated an accountable accident and which did not result in his termination, as were two other drivers, Ronnie Walker and Jimmy Johnson. Mangold Depo. at 28-30; Couch Depo. at 22. No other worker had ever allegedly given a false or inaccurate report about an accident which occurred while driving during the time that Mr. Couch was the manager of the Hobbs and Odessa terminal. Couch Depo. at 32. The reason articulated by Central Freight for the termination of Mr. Kellum was the allegedly inaccurate report of mechanical failure. In the other incidents involving Plaintiff and the other drivers there was no allegations of a false or inaccurate report of mechanical failure. Plaintiff has failed to provide evidence of pretext by demonstrating that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

Plaintiff has not provided any other evidence to demonstrate color-based animus. Without specific examples of such discrimination, Plaintiff's allegations of color-based animus are "'mere conjecture' and, thus, an insufficient basis on which to deny summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff further argues that because there is a dispute as to the actual cause of the incident

involving his truck, there are genuine issues of material fact as to pretext. However, a challenge of pretext requires the Court to look at the facts as they appear to the person making the decision to terminate plaintiff. *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220,1231 (10th Cir. 2000). Moreover, even if the Court were to assume that Central Freight's reason for termination was incorrect, such evidence would not preclude summary judgment in this case. *See Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999). The relevant inquiry is not whether Defendant Central Freight's proffered reasons were "wise, fair or correct, but whether [the Defendant] honestly believed those reasons and acted in good faith upon those beliefs." *Id*. The Court will not second guess the business judgment of the employer. *Sanchez v. Philip Morris, Inc.*, 992 F.2d 244, 247 (10th Cir. 1993). Plaintiff has not produced any evidence to show that Central Freight did not believe its reason for terminating Mr. Kellum, nor has Plaintiff produced any evidence to show that Central Freight did not act in good faith.

Plaintiff has failed to produce evidence of specific acts motivated by color-based animus, and he has failed to demonstrate a nexus between his termination and the objectionable comment made by Mr. Couch. Plaintiff has thus failed to produce sufficient evidence to show that the reason proffered for his termination by Central Freight was pretextual. Because the Plaintiff has not set forth specific facts showing that there are genuine issues of material fact for trial, Defendant's motion for summary judgment should be granted as to Plaintiff's claims under Title VII.

**D.** **Whether Defendant Central Freight should be awarded attorneys fees pursuant to 42 U.S.C. § 2000e-5.**

Defendant Central Freight asks that this Court award it attorneys fees pursuant to 42 U.S.C. § 2000e-5, which provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k) (LEXIS 2002). A court "may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). While Defendant Central Freight has prevailed on its motion for summary judgment, Plaintiff's action is not clearly "frivolous, unreasonable, or without foundation." Plaintiff presented sufficient evidence to establish the two disputed elements of his Title VII prima facie case. As such, an award for attorneys fees pursuant to 42 U.S.C. § 2000e-5 (k) is not appropriate.

## VI.   CONCLUSION

Upon review of the evidence presented, the Court has determined that Defendant Central Freight's Motion to Dismiss for Failure to State a Claim, or in the Alternative, for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment filed April 24, 2001 (*Doc. 22*) should be **GRANTED IN PART** and **DENIED IN PART**.

Wherefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims under Title VII;

**IT IS FURTHER ORDERED** that Defendant's request for attorneys fees is **DENIED**.

A judgment consistent with this Order shall be issued forthwith.

**IT IS SO ORDERED**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**